```
                   UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

KATHLEEN HERMAN,

       Plaintiff,

v.                                  Case No:  2:23-cv948-JES-KCD

NATIONSTAR MORTGAGE LLC,
d/b/a THE MR. COOPER GROUP
INC.,

       Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on review of defendant's Motion to Dismiss Amended Complaint (Doc. #44) filed on November 10, 2023. Plaintiff filed a Memorandum in Opposition to Motion (Doc. #52) on December 11, 2023. For the reasons set forth below, the motion is granted in part and denied in part, with leave to file a second amended complaint.

**I.**

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations

must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

A pleading drafted by a party proceeding unrepresented by an attorney (*pro se*) is held to a less stringent standard than one

drafted by an attorney, and the Court will construe the amended complaint liberally. Jones v. Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015). Although *pro se* complaints are construed liberally, the Court nevertheless requires that *pro se* litigants adhere to the same governing rules and procedures as litigants represented by attorneys. See Albra v. Advan, Inc., 490 F.3d 826, 829 (11th Cir. 2007) (citing Loren v. Sasser, 309 F.3d 1296, 1304 (11th Cir. 2002)).

## II.

Taking the allegations in the First Amended Complaint (Doc. #20) as true, Kathleen Herman (Herman or Plaintiff) purchased a $115,000 single-family home (the Property) in 2004, using $23,000 in cash and a $92,000 Note with Lehman Brothers secured by a mortgage on the Property. The mortgage terms did not require an escrow for property taxes and insurance. The mortgage was serviced by Seterus until the company was acquired by Nationstar Mortgage (Nationstar or Defendant) in 2018. In 2013, Seterus demanded that plaintiff establish an escrow. Plaintiff started paying $300 a month bundled with her monthly mortgage payment into escrow, while also directly paying the tax payments to Lee County, Florida, and directly paying insurance.

Although Plaintiff paid the taxes directly to the taxing authority, Nationstar did not refund her money from the escrow, and continued to require her to pay into escrow. Plaintiff

3

estimates that since 2013 she has paid more than $36,000, plus interest, which amount was never used as intended.

Since 2020, Plaintiff has been trying to find out what happened to the monies by writing letters to Nationstar at the address on the bills. Some letters were identified as Qualified Written Requests under the Real Estate Settlement Practices Act (RESPA), but those not so captioned identified the Property location and the information sought. Plaintiff states that in response she only received incomplete spreadsheets with no key.

The First Amended Complaint (Doc. #20) sets forth four unnumbered counts[1] asserting violations of RESPA and one count asserting a state law claim for conversion. Defendant seeks to dismiss each count.

### III.

As a preliminary matter, plaintiff argues that the motion to dismiss cannot be entertained because it is not the first motion

---

[1] "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense." Fed. R. Civ. P. 10(b).

4

to dismiss filed in the case.  While it is not the first such motion, it will be considered and resolved on the merits.

On March 29, 2023, plaintiff filed a First Amended Complaint (Doc. #20), which the District Court in the Southern District of New York deemed timely and properly filed.  (Doc. #23.)  "[A]n amended complaint supersedes the initial complaint and becomes the operative pleading in the case." Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007). The District Court in the Southern District of New York also allowed Defendant to file a motion to dismiss The First Amended Complaint (Doc. #23, ¶3), which motion was filed on April 19, 2023 (Doc. #24).  This motion to dismiss asserted grounds under Fed. R. Civ. P. 12(b)(3) and Fed. R. Civ. P. 12(b)(6).  (Id.)  The Southern District of New York granted the requested Rule 12(b)(3) transfer due to improper venue but did not rule on the merits of the request to dismiss for failure to state a claim.  (Doc. #31.)  The next motion to dismiss (Doc. #41) was denied without prejudice after transfer for failure to comply with a procedural rule.  (Doc. #42.)  The current motion to dismiss (Doc. #44) is properly filed, raises issues which have not been previously addressed, and will be resolved on the merits.

**IV.**

"RESPA, as a remedial consumer-protection statute, should be construed liberally in order to best serve Congress's intent." Renfroe v. Nationstar Mortg., LLC, 822 F.3d 1241, 1244 (11th Cir.

5

2016) (citation omitted). RESPA requires certain mortgage servicers to comply with the obligations specified in 12 U.S.C. § 2605 as well as any regulations issued to carry out the statute's purposes. See 12 U.S.C. § 2605(k)(1)(E). A servicer's failure to comply with RESPA or its implementing regulations may give rise to a private cause of action. Id. § 2605(f); Hardy v. Regions Mortg., Inc., 449 F.3d 1357, 1359 (11th Cir. 2006). To prevail on a RESPA claim, a plaintiff must show: (1) a defendant's failure to comply with a RESPA obligation; and (2) that plaintiff sustained actual damages as a result. Renfroe, 822 F.3d at 1244.

### A. Count I: Failure to Pay Taxes/Insurance From Escrow

In her unnumbered Count I, Plaintiff alleges that she placed more than $36,000 in escrow with the loan servicers for payment of her property taxes and insurance "which they have not paid." (Doc. #20, ¶ 14.) Plaintiff alleges this was a violation of 12 U.S.C. § 2605(g), which provides:

> If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due. Any balance in any such account that is within the servicer's control at the time the loan is paid off shall be promptly returned to the borrower within 20 business days or credited to a similar account for a new mortgage loan to the borrower with the same lender.

12 U.S.C. § 2605(g).

To state a claim, a plaintiff must allege that: "(1) the borrower had a federally related mortgage loan; (2) the terms of the loan agreement require the borrower to make payments to an escrow account; (3) the borrower owed taxes or premiums that were to be paid out of the escrow accounts; (4) the servicer failed to make such payments in a timely manner, *i.e.* before the deadline to avoid a penalty and before the payment was 30 days overdue; and (5) at the time the premium payment was due, the borrower was not more than 30 days delinquent in making mortgage payments." Hyderi v. Washington Mut. Bank, FA, 235 F.R.D. 390, 399 (N.D. Ill. 2006). Nationstar argues that Count I fails to adequately plead the fourth element because it does not allege that the tax/insurance payment was late, and therefore does not allege that plaintiff was prejudiced or damaged as a result of non-payment. (Doc. #44, p. 5.)

This portion of 12 U.S.C. § 2605(g) requires two things: That the servicer "make" the payments, and that the payments be made "in a timely manner." The First Amended Complaint alleges that Nationstar <u>never</u> made the tax or insurance payments, that the servicer's escrow payment was therefore not in a timely manner, and that the only reason the taxes and insurance were not late was because plaintiff paid them herself. The Court finds that this sufficiently alleges a cause of action, including any requirement

of damage caused to plaintiff for having to double-pay the taxes and insurance.

Nationstar also argues that any alleged failure to make tax or insurance payments is time-barred by the three-year statute of limitations. The suit was filed in New York on October 20, 2022; therefore, any lack of payment claim can go back three years from that date. Nationstar argues that the Amended Complaint is "noticeably vague" as to when the violations took place. (Doc. #44, p. 6.) But the statute of limitations is an affirmative defense, so the complaint may not be dismissed unless it is apparent from its face that the claim is untimely. Nance v. Comm'r, Georgia Dep't of Corr., 59 F.4th 1149, 1154 (11th Cir. 2023) (citing La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004), abrogated on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007)). Defendant has not met that standard in this case. Defendant's motion to dismiss Count I is denied.

### B.   Count II: Failure to Conduct Annual Examinations

In the unnumbered Count II, the First Amended Complaint alleges that Defendant violated a RESPA regulation (12 CFR 1024.17(c)(3))[2] which requires Nationstar to conduct an annual

---

[2] Count II actually cites 12 CFR 1024.17(c)(2), but this appears to be a typographical error.

8

examination of the escrow account. Had Nationstar done so, plaintiff asserts, the overage would have alerted Nationstar to the fact that the monies it was escrowing for taxes and insurance were not being used, and that it should not have required Plaintiff to keep paying an unnecessary $300 a month. (Doc. #20. ¶ 17.)

The pertinent regulation provides in relevant part:

> For each escrow account, the servicer must conduct an escrow account analysis at the completion of the escrow account computation year to determine the borrower's monthly escrow account payments for the next computation year, subject to the limitations of paragraph (c)(1)(ii) of this section. In conducting the escrow account analysis, the servicer must estimate the disbursement amounts according to paragraph (c)(7) of this section. Pursuant to paragraph (k) of this section, the servicer must use a date on or before the deadline to avoid a penalty as the disbursement date for the escrow item and comply with any other requirements of paragraph (k) of this section. The servicer must use the escrow account analysis to determine whether a surplus, shortage, or deficiency exists, and must make any adjustments to the account pursuant to paragraph (f) of this section. Upon completing an escrow account analysis, the servicer must prepare and submit an annual escrow account statement to the borrower, as set forth in paragraph (i) of this section.

12 C.F.R. § 1024.17(c)(3).

Nationstar argues this claim must be dismissed because § 1024.17(c)(3) is a regulation which does not create a private cause of action. (Doc. #44, pp. 7-8.) While not every RESPA violation forms the basis of a private cause of action, Hardy, 449 F.3d at

9

1360, Nationstar has cited no binding authority holding that this regulation does not do so. The Court is not persuaded that dismissal is appropriate, so the motion to dismiss Count II is denied.

### C. Count III: Failure to Promptly Refund Excess

In the unnumbered Count III, the First Amended Complaint alleges that RESPA requires (in CFR § 1024.17(c)(1)(ii)) that when an escrow surplus is identified the excess funds are to be refunded. The First Amended Complaint asserts that Defendant's excess funds frequently exceeded the "floor" for such a rebate requirement, but that at no time did Plaintiff receive a rebate from the surplus. (Doc. #20, ¶18.)

As with Count II, Nationstar argues that there is no private cause of action created by CFR § 1024.17(c)(1)(ii)). Since Nationstar has not cited any binding precedent specific to this regulation, the motion to dismiss Count III is denied.

### D. Count IV: Policy of Inadequate Responses

In the unnumbered Count IV, the First Amended Complaint alleges that RESPA imposes the duty on loan servicers to promptly respond to a "qualified written request" from a borrower seeking "information related to the servicing" of a loan or alleging an account error. See 12 U.S.C. § 2605(e)(1)(A)-(B). The First Amended Complaint states that plaintiff wrote letters to Nationstar, "[s]ome were identified as Qualified Written Requests

10

under RESPA, but even those that were not so captioned identified the property location and information sought." (Doc. #20, ¶10.) Count IV continues that "[i]n the numerous responses to Ms. Herman's Requests, Nationstar never made any effort to correct obvious errors (such as refunding to her excess escrow[.] The answers it did reply consisted of spread sheets with neither code nor 'key' which would have allowed he[r] to comprehend them. This pattern of non-response - or at best unintelligible response - is a standard routine or way of operating by Nationstar." Plaintiff seeks statutory and actual damages. (Id. at ¶¶ 19-22.)

Defendant argues that the First Amended Complaint has not pled the existence of a valid qualified written request or proximate damages and has failed to show entitlement to statutory damages. (Doc. #44, pp. 8-14.)

A servicer of a federally related mortgage loan which receives a qualified written request from the borrower for information relating to the servicing of such loan must take certain steps within certain time frames. 12 U.S.C. § 2605(e)(1)(A); 12 U.S.C. § 2605(e)(2). A "qualified written request" is defined as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> **(i)** includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> **(ii)** includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the

11

>account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). Thus, a "qualified written response" is a "written correspondence" from the borrower to the servicer that (1) identifies the borrower and the borrower's account; and (2) either (a) asserts an error in the borrower's account or (b) requests information related to the servicing of the borrower's account. To state a cause of action, plaintiff must show that defendant is a servicer, that defendant received the qualified written request from her, that it related to the "servicing of the loan", that defendants failed to respond adequately, and that plaintiffs are entitled to actual or statutory damages. Echeverria v. BAC Home Loans Servicing, LP, 900 F. Supp. 2d 1299, 1305-06 (M.D. Fla. 2012), aff'd, 523 F. App'x 675 (11th Cir. 2013).

Here, Plaintiff did not attach any of the letters which she claims constitute a qualified written request or describe them in other than conclusory terms. Not all letters sent to the servicer are qualified written requests. The Court finds that the allegations concerning the qualified written requests are without sufficient supporting facts to show a plausible claim. Thomason v. OneWest Bank, FSB, 596 F. App'x 736, 740 (11th Cir. 2014). Plaintiff also has not shown supporting facts of the specific responses were deficient and/or non-responsive. The Court will dismiss this count as insufficiently pled, with leave to file an

amended complaint sufficiently pleading this claim if plaintiff chooses. Since the count will be dismissed, the Court need not address the damages issues raised by defendant as to this count.

**E.  Common Law Conversion**

In the unnumbered Count V, the First Amended Complaint alleges a common law claim of conversion under Florida law. Plaintiff alleges that this conversion occurred when Nationstar demanded plaintiff put money into an escrow account intended to pay her taxes and insurance, but then did not pay those bills through at least 2021. Plaintiff alleges that this deprived her of her property permanently or for an indefinite time, and it was inconsistent with her ownership interest in the property. (Doc. #20, ¶23.)

To establish conversion of money, plaintiff must show "(1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so." IberiaBank v. Coconut 41, LLC, 984 F. Supp. 2d 1283, 1306 (M.D. Fla. 2013), aff'd, 589 F. App'x 479 (11th Cir. 2014) (citation omitted).

> Conversion is an unauthorized act that deprives a person of his property permanently or for an indefinite time. Shelby Mut. Ins. Co. v. Crain Press, Inc., 481 So. 2d 501, 503 (Fla. 2d DCA 1985); see also Marine Transp. Servs. Sea-Barge Group, Inc. v. Python High Performance Marine Corp., 16 F.3d 1133, 1140

13

> (11th Cir. 1994) ("In Florida, the tort of conversion is an unauthorized act which deprives another of his property permanently for an indefinite time.") "A conversion occurs when a person who has a right to possession of property demands the property's return and the demand is not or cannot be met." Id.
>
> Before a conversion can occur, a party that was previously in rightful possession of another party's funds must be informed by the other party that: "1) continued possession of the funds is no longer permitted; 2) a demand for return of the funds is necessary; and 3) the party holding the funds must fail to comply with the demand." Black Bus. Inv. Fund of Cent. Fla., Inc. v. Fla. Dep't of Econ. Opportunity, 178 So. 3d 931, 937 (Fla. 1st DCA 2015). Thus, while a plaintiff need not always allege a demand, "[i]f the original taking is lawful, the withholding being the wrongful element, a demand is necessary...." Mullenmaster v. Newbern, 679 So. 2d 1186, 1186 (Fla. 4th DCA 1996).

Ranger v. Wells Fargo Bank N.A., 757 F. App'x 896, 904-05 (11th Cir. 2018). The First Amended Complaint suggests that Nationstar lawfully came into possession of the escrow payments, so plaintiff needed to allege that she asked Nationstar to return the money and Nationstar refused. Id. at 905. But the First Amended Complaint makes no such allegation, so the conversion count will be dismissed without prejudice.

Accordingly, it is now

**ORDERED**:

1. Defendant's Motion to Dismiss (Doc. #44) is **GRANTED IN PART AND DENIED IN PART**.

14

2. Counts IV and V of the First Amended Complaint are d**ismissed without prejudice** to filing a Second Amended Complaint which includes amendments to these claims. If plaintiff chooses not to file a Second Amended Complaint within **FOURTEEN (14) DAYS** of this Opinion and Order, the remaining counts of the First Amended Complaint shall be the operative pleading and defendant shall file an answer within **FOURTEEN (14) DAYS** of the expiration of Plaintiff's time to amend.

**DONE and ORDERED** at Fort Myers, Florida, this __2nd__ day of February 2024.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of Record

15