```
U.S. DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
-----------------------------------------------------------X
        KATHLEEN HERMAN and              :
            JEFFREY GHIAZZA              :
                                         :
            Plaintiffs                   : 23-cv-00948
                                         : Second Amended
v.                                       : Complaint
                                         :
THE MR. COOPER GROUP, INC.               :
d/b/a NATIONSTAR MORTGAGE                :
        Defendants                       :
                                         :
                                         :
-----------------------------------------------------------X
```

1. On February 2, 2023, the Hon. John Steele denied most of the defendant Mr. Cooper's arguments on a motion to dismiss, and insofar as the two counts on which he granted such motion, held such ruling with without prejudice and with leave to renew.

2. At a subsequent telephone status conference, when Jeffrey Ghiazza, Ms. Herman's life partner for the last two decades, sought to intervene inasmuch as some of the monies at stake were paid by him, he was advised he could not do so without in fact becoming a plaintiff.

3. Accordingly, pursuant to FRCP 19 Mr. Ghiazza should be joined as a party because in his absence the court cannot "accord complete relief among existing parties" and as a practical matter impair or [his] ability to protect the interest…." Based on the wording of FRCP19, the plaintiffs believe Mr. Ghiazza

1

can be accomplished by Court order without a motion, and if so, asks that the court make such order; is not, the plaintiffs ask that this be treated aa a motion to add Mr. Ghiazza as a co-plaintiff. [1].

4. This amended complaint deals only with the two causes of action which Judge Steele found insufficiently pled and dismissed without prejudice to renew; the other parts of the First Amended Complaint are undisturbed and incorporated by reference.

5. The two causes of action which are re-pled were denominated by Judge Steele as Count IV ("Policy of Inadequate Responses) pursuant to RESPA, and Count V, Common Law Conversion.

## NATIONSTAR'S PATTERNS OF NON-ANSWERING QWR

6. Since 2020. Ms. Herman has been trying to find out what happened to the monies she was required to put in escrow for property taxes which we never paid by writing letters to Nationstar at the address indicated on the bills sent to her. Some were identified as Qualified Written Requests under RESPA, but even those that were not so captioned identified the property location and information sought. Some were identified as Qualified Written Requests under RESPA, but even those that were not so captioned identified the property location and

---

[1] As a housekeeping issue, the address and telephone number for Mr. Ghiazza are the same as those for Ms. Herman.

2

information sought. As such these are proper QWR. Nationstar did not acknowledge receipt within five days. In response, she received what she terms "jibber jabber" --- incomplete spread sheets with no key to understand the entries.

7. To illustrate, ion February 28. 2022, Ms. Herman wrote Nationstar (Exhibit 1):

> "Please provide me with…The date and amount of any sums you have billed me for property taxes and hazard insurance from January 1, 2017 to the current date,…Canceled checks showing any payments you have made on my behalf for property taxes, flood or hazard insurance from January 1, 2017 to the current date."

8. In response she was told there were no checks as all transactions were handled electronically, .\and 12 pages of printout with no key to allow her to understand the entries. She has consulted accounting textbooks and friends who are accountant, and had not been able to decipher them. For example, a sample page (Exhibit 2) repeats the designation "ZZZF" which appears to be a notation peculiar to Nationstar's accounting system. [2]

9. Ms. Herman in answer wrote to Mr. Cooper "You [sic] recent response to my QWR is unsatisfactory so let me spell out more precisely: "What is he current amount in that escrow?

10. Nationstar has not responded to that letter.

---

[2] It is significant to note that this and other pages contain mulrtiple charges for "E Pay" fees. These are pertinent and discussed further in the cause of action allegiung Common Law Conversion

3

11. Nationstar is undeniably a loan servicer, Ms. Herman sent multiple QWR consistent with the requirements of the statute; Nationstar failed to respond or did so with incomprehensible jargon,

12. Given the ordinary meaning of "investigation" and the purposes of RESPA, § 2605 (e) (2) (B)-(C) imposes a substantial obligation of mortgage servicers to conduct a reasonably thorough investigation before responding to a borrower's QWR. See "Regulation X."

13. Nationstar's either ignored Ms. Herman's QWR of responded with Incomprehensible gobbledygook as demonstrated above. Taken together, these show a "pattern or practice of noncompliance" with RESPA's requirement § 2605(f) (1) (B) allowing Ms. Herman to collect statutory damages in a private right of action. See12 U.S.C. §§ 2605[f][1], 2605[f][3]). She also suffered actual damages in the loss of use of her money during thee time it was improperly held by Nationstar.

## THE FIFTH CAUSE OF ACTION –CONVERSION

14. The elements of conversion in Florida are: 1) a taking of chattels; 2) with intent to exercise ownership over them an ownership inconsistent with the real owner's right of possession A conversion may be evidenced by a plaintiff's demand and a 8 defendant's refusal, but <u>proof of these actions is unnecessary</u>

4

<u>when a plaintiff can demonstrate that the unauthorized act constituted a conversion regardless of a demand.</u>  See *Goodrich v. Malowney,* 157 So. 2d 829, 832 (Fla. 2d DCA 1963) (citing *Louisville & N.R. Co. v. Citizens' & Peoples' Nat'l Bank of Pensacola,* 77 So. 104, 105 (Fla. 1917)).  [Emphasis added]

15. In addition to the escrow payments wrongly demanded and held by Nationstar, Exhibit 2 in this complaint demonstrated that Nationstar regularly charged the plaintiffs with an "E Pay" fee of $19.00 every time they made a payment by telephone or wire payment. This practice is termed "pay to pay." It continued until January 31, 2020.

16. Nationstar separately from this lawsuit has reached a reached settlement in *Garcia v. Nationstar Mortgage LLC,* Case No. C15-1808 TSZ (W.D. Wash.). Although this was litigated in a Washington state Federal court, the covered class in this "pay to pay" consumer class action lawsuit covered residents of Florida during the time the plaintiffs incurred "pay to pay" fees. Settlement fund were to me repaid in the winter of 2023 but have not.  The plaintiffs do not seek recovery through the settlement fund, but instead seek repayment in this action.

## SUMMARY AND CONCLUSION

Ms. Herman demands:

- Statutory damages of $60,000 from violation of RESPA.

5

- An accounting of and return of about $40,000 she placed in escrow to pay her taxes which were improperly diverted, together with interest.

- An accounting and return "late" fees.

- Punitive damages of $250,000 to deter Mr. Cooper from future illegal actions, and

- Whatever other relief the court finds just.

Respectfully,

*Kathleen Herman* ss

Kathleen Herman, *pro se*   February 11, 2024

3

---

[3] Inasmuch as Nationstar has conceded the "pay to pay" charges, no demand is necessary, In the alternative the Federal class action lawsuit constitutes such "demand"